THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| CHANDRA M. GREEN, | ) | Case No. 2:09CV00457 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| WAL-MART STORES, INC., | ) | |
| Defendant. | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On March 12, 2009, Plaintiff Chandra Green, who is African-American, was waiting at the checkout stand to pay for groceries at a Wal-Mart Store (sometimes hereafter the "Store") in Cedar City, Utah, when the cashier identified her as someone who previously had passed a bad check at the Store. After paying for her groceries with a debit card, receiving cash back which she intended to exchange for coins at the State Bank of Southern Utah and for other transactions at McDonald's and Red Box Automated Retail, all located on Store premises, Ms. Green left the checkout stand. She then was approached by Jennifer Barnhurst, the Store's asset protection associate, and Nate Sutherland, the assistant manager, and asked if she would talk to them. Ms. Green agreed and accompanied them to a small room near the Store exit, for the purpose of identifying herself in some photographs.

While waiting to view the photographs, Ms. Green telephoned a friend, Laura Westhoven and informed her that she was being detained in Wal-Mart. Overhearing this comment, Mr. Sutherland stated that Ms. Green was not being detained and could leave at any time. Ms. Barnhurst made similar comments to Ms. Green. Ms. Green viewed three photographs depicting African-American women who were suspected of fraudulent activity and was asked by Ms. Barnhusrt if she was one of these individuals. Ms. Green stated that she was not. Shortly thereafter, two police officers arrived and confirmed that Ms. Green was not depicted in any of the three photographs.

Thereafter, Ms. Green took her groceries to her car and returned in the company of her friend, Ms. Westhoven, to transact business at the State Bank of Southern Utah, located in the front lobby area of the Store. She did not make purchases at McDonald's or use the Red Box as she stated was her intention.

Ms. Green subsequently filed this action under 42 U.S.C. § 1981 claiming racial discrimination in the ability to contract and depravation of the full and equal benefit of the law. Her Complaint also claims false imprisonment, defamation per se, and intentional inflict of emotional distress.

Wal-Mart seeks Partial Summary Judgment (Doc. #20) on the claimed violation of § 1981 (Claim One).

## II. SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. 242.

---

[1] Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242.

### III. DISCUSSION

#### A. Section 1981 Claim

To prevail on § 1981 claim in the context of a retail transaction, a claimant must demonstrate: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001), *cert. denied*, 534 U.S. 1131 (2002). Those protected activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...". 42 U.S.C. § 1981(a). Ms. Green alleges that she has been denied both the right to contract and the full and equal benefit of the law.

##### 1. Contracts Clause Claim

Wal-Mart asserts that it is entitled to summary judgment on Ms. Green's 1981 contract clause claim because she has failed to identify an actual loss of a contract interest. She had purchased her groceries before she was approached by Ms. Barnhurst and Mr. Sutherland and, Wal-Mart contends, it did nothing to prevent Ms. Green from transacting business with other tenants found within the Store.

Ms. Green, however, asserts that Wal-Mart interfered with two existing contractual relationships. The first she identifies as her acceptance of "Wal-Mart's offer to not only shop for groceries, but also to purchase fast-food, rent a movie, use the bathroom, and get change to do her laundry at various points all within the [Store]". Opp'n at 16. Without citation to supporting authority, Ms Green argues that over ten months she had "established a routine and practice of buying groceries, getting cash back, exchanging the cash for quarters, getting a snack at McDonald's, using the bathroom when needed, and checking the Redbox to rent movies" ,*id*., and that this routine presents a triable issue as to whether there were merely possible, or actual losses, of contract opportunities.

Ms. Green contends that the second contract that Wal-Mart interfered with commenced when she ask for cash back while paying for her groceries, stating that "she needed to get change at the bank, and motioned with her arm and hand toward State Bank across the aisle". *Id*. at 17. She urges that she was thwarted in continuing with her banking transaction by Ms. Barnhurst and Mr. Sutherland, who escorted her to the Store's security room.

The Tenth Circuit has "clarified 'that a § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities.'" *Hampton*, 247 F.3d

5

at 1104 (citation omitted). The facts presented do not reflect the actual loss of a contract interest. Ms. Green's consent to accompany Store personnel to the security room undermines her position that Wal-Mart interfered with her putative contractual relations with State Bank, McDonald's and Red Box. Moreover, it is undisputed that she returned to the Store premises after putting her groceries in her car and completed her banking. Thus, Wal-Mart did not prevent her from contracting with State Bank. In addition, although Ms. Green asserts that she was too shocked and humiliated to complete her other errands, there is no viable evidence that Ms. Green took any tangible steps to contract with McDonald's or Red Box, or for that matter, that Wal-Mart prevented her from pursuing any such contract. "[A] plaintiff alleging interference with the creation of a contractual relationship in the retail context must demonstrate that he or she 'actively sought to enter into a contract with the retailer,' and made a 'tangible attempt to contract.'" *Gregory v. Dillard's Inc.*, 565 F.3d 464, 470 (8th Cir.) (citations omitted), *cert. denied*, 130 S. Ct. 628 (2009). *See also*, *Hampton*, 247 F.3d at 1118 (and cases cited therein)("[w]e are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping"); *Shawl v. Dillard's Inc.*, 17 Fed. Appx. 908, 912 (10th Cir. 2001)(finding no 1981 contract violation where claim was based

on the plaintiff's "unexpressed subjective intent to return to purchase a pair of sandals that might no longer have been there"); *Williams v. Staples, Inc.*, 372 F.3d 662, 667-68 (4th Cir. 2004)(in the retail context, § 1981 plaintiffs are required to demonstrate that they sought to enter into a contract with the retailer); *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007)(citation omitted)("'in the retail context, the plaintiff must demonstrate the loss of an actual ... contract interest'").

The Court rejects Ms. Green's position that merely by entering the Store premises, where other tenants were located, she took any step to contract with those businesses. *See Hampton*, 247 F.3d at 1118 (rejecting expressly the "expansive interpretation that § 1981 broadens the scope of relevant civil rights and protects customers from harassment upon entering a retail establishment"). And as noted, there must be an actual loss of a contract interest, not merely the possible loss of a future contract. *Hampton*, 247 F.3d at 1104. It is undisputed that Ms. Green did not pursue transactions with McDonald's or Red Box.

In sum, the uncontroverted facts demonstrate that Wal-Mart did not interfere with any contractual relationship, and the Court concludes, as a matter of law, that Wal-Mart is entitled to summary judgment as to Plaintiff's 1981 contract clause claim.

## 2. Full and Equal Benefits Clause

Ms. Green also alleges liability under § 1981's protection of her right to "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,...." 42 U.S.C. § 1981(a). She complains that "[t]he conduct of Wal-Mart's employees that subjected [her] to excessive scrutiny and detention interfered [not only] with her ability to contract ... [but also] has deprived her of the full and equal benefits of laws and proceedings." Compl. ¶ 39. Apparently Ms. Green bases her claim on the assertion that she was unlawfully detained by Wal-Mart personnel.

Wal-Mart asserts that it is entitled to summary judgment on Ms. Green's 1981 denial of the full and equal benefits of the laws claim because Wal-Mart is not a state actor. It also asserts that § 1981 does not federalize Utah tort law, and that there was no denial of equal benefits.

Wal-Mart's position, that Ms. Green's 1981 equal benefits claim fails because there is no state action, is rejected. Section 1981, on its face, explicitly applies to nongovernmental actors. *See* § 1981(c)("The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law"). Although, the Court is unaware of any Tenth Circuit authority, the Court agrees with *Hester v. Wal-Mart Stores, Inc.*, 356 F. Supp. 2d 1195 (D. Kan. 2005), "that the Tenth

8

Circuit would hold that state action is not required to state a 'full and equal benefit' claim under section 1981." *Id*. at 1199. *See also*, *Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1173 (D. Kan. 2007)(state action not required); *Lee v. Brown Group Retail, Inc.*, 2003 WL 22466187 (D. Kan. 2003)(rejecting argument that state action required in 1981 equal benefits). As were the courts in *Hester* and *Lee*, this Court is persuaded by the Second Circuit's opinion in *Phillip v. University of Rochester*, 316 F.3d 291 (2d Cir.2003)(concluding as a matter of first impression that the equal benefits provision of § 1981 does not require state action). *See also, Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003), *cert. denied*, 542 U.S. 945 (2004)(agreeing with the Second Circuit and finding that § 1981 does not require state action to state cognizable equal benefits claim); *but see Bilello v. Kum & Go, LLC,* 374 F.3d 656, 661 (8th Cir. 2004)(limiting equal benefit clause to suits against state actors); *Brown v. Phillip Morris, Inc.*, 250 F.3d 789 (3d Cir. 2001)(same): and, *Shaare Tefila*

*Congregation v. Cobb*, 785 F.2d 523, 525-26 (4th Cir. 1986)(same), *rev'd on other grounds*, 481 U.S. 615 (1987). [2]

Wal-Mart also urges that § 1981 was not intended to create an omnibus remedy for all racial injustice and that it "is unaware of any decision in which the Tenth Circuit has held that the section 1981 equal benefits clause creates a federal remedy for all Utah tort claims in which racial animus is alleged." Mem. Supp. at 13. It contends that "[w]hile Plaintiff may properly assert state law tort claims, it would be inappropriate for Plaintiff to seek to federalize Utah tort based on racial animus." Mem. Supp. at 14.

---

[2]As noted in *Grace v. DRS Sensors & Targeting Systems, Inc.*, 2008 WL 4590620, *4 ( No. 6:07cv1324-ORL-28GJ, Oct. 8, 2008, M.D. Florida), the Eighth Circuit precedent is of suspect authority:

> "[S]ubsection (c) of Section 1981 was added in November of 1991.... Since November of 2001, it does not appear that any Circuit Court has held that Section 1981 requires state action, with the exception of the Eighth Circuit which was following prior precedent. In so doing, the Eighth Circuit noted that it was bound to follow its prior precedent. *Bilello*, 374 F.3d at 661, n.4. The Eight Circuit's holding in *Youndblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001) that state action is required rests on the Sixth Circuit's decision in *Chapman v. Higbee Co.*, 256 F.3d 416 (6th Cir. 2001), an opinion which has since been vacated and reversed. *See Chapman v. Higbee Co.*, 270 F.3d 297 (6th Cir. 2001)(vacating and scheduling for rehearing en banc); *Chapman v. Higbee Co*, 319 F.3ed 825 (6th Cir. 2003)(reversing and remanding).

In addition, *Brown*, which relies on *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1976), *cert. denied*, 438 U.S. 904 (1978), a pre-amendment case, and *Shaare,* likewise, a pre-amendment case, are also of suspect authority in view of the 1991 addition of subsection (c).

The Court is not persuaded by Wal-Mart's federalization argument, and it is likewise rejected. In the absence of controlling Tenth Circuit authority, the Court agrees with the following analysis of the Second Circuit which directly addresses Wal-Mart's concern.

> Because both contracts and torts are areas of particular state concern, there is no persuasive reason why racially motivated torts that deprive a plaintiff of the equal benefit of laws or proceedings for the security of persons and property should be outside the ambit of federal authority while racially motivated breaches of contract are not. Finally, we believe that any necessary safeguard against overuse of the equal benefit clause's protections is found in the words of the statute. Prospective plaintiffs first must prove a racial animus, not an easy task in itself; second must identify a relevant law or proceeding for the "security of persons and property;" and finally must persuade a fact-finder or the court that defendants have deprived them of "the full and equal benefit" of this law or proceeding. 42 U.S.C. § 1981(a).

*Phillip v. University of Rochester*, 316 F. 3d 291, 297-98 (2d Cir. 2003). The Court also agrees with similar analysis articulated by the Sixth Circuit.

> [I]t is unlikely that application of subsection (c)'s plain language will unleash the flood of cases [defendant] predicts. The language surrounding the "full and equal benefit" clause serves to cabin both the number and nature of claims that may be brought under its ambit. The equal benefit clause may only be invoked when one party denies another the "full and equal benefit of all laws and proceedings *for the security of persons and property* as is enjoyed by white citizens." 42 U.S.C. § 1981(a)(emphasis added [in original]). The "security of persons and property" language limits the potential class of cases that may be brought under the equal benefit provision. A litigant must demonstrate the denial of the benefit of a law or proceeding protecting his or her personal security or a cognizable property right.

11

> Further, to prevail on a section 1981 claim, a litigant must prove intentional discrimination on the basis of race, which involves a high threshold of proof. Because of these significant limitations, we do not believe that the plain language of subsection (c) federalizes a wide swath of conduct traditionally covered by state common law.

*Chapman v. Higbee Co.*, 319 F.3d 825, 832-33 (6th Cir. 2003).

Even though state action is not required, a § 1981 equal benefit claim does require some nexus to a relevant state law or proceeding. *Phillip v. University of Rochester*, 316 F. 3d 291, 298 (2d Cir. 2003); *Drayton v. Toys 'R' Us Inc.* 645 F. Supp 2d 149, 158 (S.D. N.Y. 2009). In her Complaint, Ms. Green alleges that Wal-mart violated state laws relating to false imprisonment. Because those allegations can be construed as relating to laws impacting the security of her person, Ms. Green's claim is within the purview of the § 1981.

For purposes of the present motion, Ms. Green has put into dispute material issues of fact regarding her alleged detention. Although she acknowledges that she was told she was not being detained and that she could go at any time, she disputes that she was free to leave the security room because the door was physically blocked by Mr. Sutherland, and his body language conveyed to her that she was not free to leave. She also states that while waiting in the security room she called her friend because she was being "detained" and was losing any desire to attend the planned "girls night out" with her friends. She further asserts that she could

not have left the security room with her cart of groceries due to Sutherland blocking the doorway. Ms. Green states she was detained until police arrived and assured Ms. Branhurst and Mr. Sutherland that she was not one of the African-American women depicted in the three photographs.

Moreover, in her responsive pleading she has set forth an arguable position that Wal-Mart personnel acted with intent to discriminate against her on the basis of race. *See* Opp'n at 13-15. Wal-Mart has failed to address that element of Plaintiff's claim in its motion.

Because Wal-Mart has failed to establish that there are no material issues of fact in dispute and that it is entitled to judgment as a matter of law, its Motion as to Ms. Green's equal benefits claim must be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Wal-Mart's Motion for Partial Summary Judgment (Doc. #20) is **granted** as to Plaintiff Chandra Green's § 1981 contract clause claim, **but denied** as to her § 1981 equal benefits clause claim.

IT IS SO ORDERED.

DATED this 18th day of August, 2010.

BY THE COURT:

*David Sam*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT